BULLOCK'S EXECUTORS *vs.* WOODWARD and others.

Application to set aside a sheriff's sale on the ground of unfairness, arising from an alleged misunderstanding as to the manner of sale and the amount and apportionment of encumbrances, refused.

On petition to set aside sheriff's sale.

*Mr. William H. Vredenburgh,* for the petitioner.

*Mr. G. S. Cannon,* for the purchaser.

THE CHANCELLOR.

Application is made by Robert Woodward, who was the owner of the equity of redemption of the mortgaged premises ordered to be sold in this cause, to set aside a sale made by the sheriff of Monmouth under the execution. The ground of the application is the alleged unfairness of the sale, arising from a misunderstanding said to have existed on the part of persons present, who intended to bid in the property, as to the manner of sale and the encumbrances to which the premises would be subject in the hands of the purchaser. The unfairness alleged is claimed to have arisen from the announcement made by the deputy sheriff by whom the property was put up for sale and cried off, that the premises were sold subject to all prior encumbrances. The property in question was the second tract mentioned in the execution. It is known as the homestead. The first tract, which was struck off just before the second was put up, was sold subject to the encumbrance of a mortgage called the Cox mortgage, upon it, the holder of that encumbrance not having been made a party to the suit. The execution commanded the sale of the two tracts, separately, and that out of the proceeds of the sale of the first, the complainant should, in the

first place, be paid $5900.96, with interest and costs, and that out of the proceeds of the sale of the homestead, the sheriff should first pay to Edward Black, executor of Job Black, deceased, $4825.50, with interest and costs, and then to the complainants any balance of the debt, interest, and costs remaining unpaid. There appears to have been no misunderstanding as to the sale of the first tract, but it is alleged that, that tract having been sold subject to the Cox mortgage, the announcement made by the deputy sheriff, that the sale of the homestead was to be made subject to all prior encumbrances, induced some of those present at the sale to conclude that that property was to be sold subject to the Black mortgage. The first mortgage was struck off to Anthony Bullock, one of the complainants, at $1700, and the homestead was struck off to him at $5100. By the will of Robert Woodward, Sen., legacies to the amount of $14,000 were charged on a farm called the Lippincott Place and the homestead. It was estimated that the homestead ought to pay one-half of the legacies, and on that half interest was in arrear, so that the encumbrance of the legacies on the homestead property amounted to about $7450. The price paid by Mr. Bullock for that property, therefore, was about $12,550, equal to about $70 an acre, for there are one hundred and sixty acres of it. Soon after the sale Mr. Bullock, the purchaser, sold the homestead and made a contract to convey it accordingly, to Dr. James M. Bean, one of the bidders thereon, at the price of $14,550. Much testimony has been taken by the parties, which I have very carefully examined and considered. It appears very clearly from the evidence, that the deputy sheriff set up the property for sale, subject to all prior encumbrances, and that he made no announcement or statement whatever to the effect that the property was to be sold subject to the Black mortgage. Dr. George Goodell, one of the petitioner's witnesses, testifies that the deputy sheriff was asked " what the encumbrances were in the will?" and he said he did not know; and the witness says that his impression is, that the deputy sheriff, or

the sheriff, in answer to some one's question, stated that he was "selling the petitioner's interest, subject to the will." All present understood that the homestead was sold subject to its proportion of the legacies. It is claimed by the petitioner that the first tract having been sold subject to the Cox mortgage, the conclusion was very naturally drawn by the bidders present, or some of them at least, that the homestead was sold in like manner, subject to the Black mortgage, that being an encumbrance prior to the complainants' mortgage. It is alleged that Mr. Bullock, the purchaser, was himself under this erroneous impression during the bidding, up to the time when the property was standing at a bid, (which was Dr. Bean's,) of $1400, and that then the sheriff, who was present, told him that that money would go to the Black mortgage, whereupon Mr. Bullock made a bid of $4000. But Mr. Bullock testifies that he fully understood the matter before the sheriff spoke to him on the subject, and it appears that he had taken pains to inform himself before the sale, as to how, and subject to what encumbrances, the property would be sold; and not only so, but he had given the benefit of his information on the subject to Dr. Bean, the evening before the day of the sheriff's sale, and also at the opening of the sale. Of the persons who have been produced as witnesses on behalf of the petitioner, Dr. Bean is the only one who appears to have been a bidder at the sale, and he admits that he knew that the property was not sold subject to the Black mortgage, but says that, in his excitement arising from the contest in bidding on the first tract, he became confused, and forgot it. His bidding on the homestead was done through Samuel Conover. The latter, however, is not produced as a witness. The other witnesses of the petitioner who testify on the subject are, Oliver H. P. Emley, George Goodell, John G. Meirs, Gilbert S. Lawrie, and Edward B. Woodward, a brother of the petitioner. Mr. Emley testifies that he did not attend the sale as a purchaser, and did not want to buy; that he took no interest in it, and was not there when the execution and con-

ditions of sale were read.   Dr. Goodell was the holder of an
encumbrance of about $2000, subsequent to the complainants'
mortgage.   He says he came to look after his debt, and that
he knew what the encumbrances against the property were,
from a statement which he had obtained from his counsel.
He gives as his reason for not making further inquiries, that
he was satisfied that the property would not bring enough to
pay his claim, and he says he will not say he would have
given the amount of the encumbrances for the property.   He
does not appear to have made a bid upon it.   Mr. Meirs
attended the sale, intending, he says, to buy the property, if
it did not bring more than $90 an acre.   He, however, made
no bid upon it, and admits that he gave to Mr. Bullock as a
reason (he says he gave it as one reason) for not bidding, that
he did not know what amount of interest was due on the
legacies.   Mr. Lawrie attended the sale, he says, to bid on
the property, to prevent it from being sacrificed ; but he did
not bid on it.   He seems to have taken no steps to inform
himself as to the encumbrances.   He says he heard the execution
read.   Edward B. Woodward did not bid, and does not appear
to have been present with an intention to bid.   On the other
hand, the person, Mr. William W. Conover, who bid against
Mr. Bullock from the bid of $4000, testifies that he heard all
the conditions of the sale read ; that he understood from the
sheriff that the one hundred and sixty acres were sold subject
to a legacy of about $7000 ; that he bid for the property with
that understanding, and declined advancing his bid beyond
$5050 ; that the sheriff, at the sale, in reply to a statement
by some one that the premises were sold subject to the Black
mortgage, said openly, that they were not sold subject to that
mortgage.   This witness testifies that he has attended sheriff's
sales frequently in Monmouth county, and never saw a fairer
sale conducted than that was.   The price at which the prop-
erty was struck off to Mr. Bullock, affords no reason for setting
aside the sale.   Five witnesses are produced by him, from
whose testimony it appears that the price was all that the
property could be reasonably expected to bring at a forced

sale. It is proved that Dr. Bean regarded the price which he agreed to pay Mr. Bullock for the property as a high one, and one which he would not have been willing to give for it, but for the fact that he desired to own it because it reminded him, in its hilliness, of his old home in New Hampshire. The sale was fairly conducted. There was a large number of persons present, from seventy-five to one hundred. No improper or unfair conduct is imputed to the sheriff, or his deputy. From twenty minutes to half an hour was occupied in selling the property, including an intermission of five minutes. The deputy sheriff had the execution there, and read it in the hearing of the persons present at the sale. The purchaser appears to have taken pains to induce others to buy. He testifies that, while the property was being sold, he stepped back into the crowd and told them, the bid being then $4600, that the property was being cried at $12,100, including its share of the legacies, and that he thought it was worth a little more. But it is urged that the property was sold at a disadvantage, because there had never been any apportionment of the legacies. But the petitioner's witness, Gilbert S. Lawrie, testifies that he had heard about the encumbrance of the legacies from a dozen sources ; that the petitioner, among others, told him about it, and that it was the general talk of the neighborhood ; that they said it was $14,000 on all the property, supposed to be $7000 on the petitioner's property, with two years' interest on $5000 of it, and that the petitioner told him that that was the amount of the encumbrances under the will, and the witness adds, that before the sale he had written it down. The deputy sheriff testifies that he heard the petitioner and his brother Edward stating something about the legacies before the sale began. It appears, also, that by agreement between the owners of the property charged with the legacies, the petitioner was to pay in respect of his ownership of the homestead, the interest of one-half of the legacy of $14,000.

I see no reason for setting aside the sale. The petition will be dismissed, with costs.